Good morning, Your Honor. May it please the Court, I'm Robert Joe, but I'm appearing today on behalf of the petitioner, Amir Sardari. This case turns on the meaning of the phrase, materially affects, in INA Section 208, A2D, which allows an alien who's been in the United States for more than a year to apply for asylum, if he or she can demonstrate, change circumstances which materially affect his or her eligibility for asylum. The purely legal question presented here is whether an alien who has a preexisting risk of harm can ever, ever establish a change circumstance which would allow him to file an otherwise untimely application for asylum. He's kind of an unusual case in that he's the one who has changed the circumstance. We don't usually, in fact, in his first case I've seen that's the fact. That's correct. But the regulations specifically state that change in personal circumstances can constitute a change circumstance for purposes of the one-year exception. Now, the immigration judge found that because Mr. Sardari had a preexisting risk of harm, his conversion to Christianity could not be considered a change circumstance. And she did that without ever considering whether his conversion materially affected the risk that he faces, the risk that he would suffer persecution if he's removed to the Islamic Republic of Iran. And she never considered whether his conversion places Mr. Sardari at risk of a dramatically more severe form of persecution. After all, apostasy, conversion from Islam to Christianity, is punishable in the Islamic Republic of Iran with death. Now, it's our view that the immigration judge's interpretation of the statute in this case is patently inconsistent with the legislative history, and it's patently inconsistent with other portions of the INA. Now, when the bill that enacted the one-year bar and the exceptional circumstance exception went to the conference committee, the Senate bill had a one-year bar, but it had a good cause exception. The conference committee altered the language and created these two exceptions for extraordinary circumstances and change circumstances. And thereafter, Senator Orrin Hatch took the lead in explaining the nature of that compromise. And he said, this is on September 27th, just three days before the bill was enacted, he said that the change circumstances exception was, quote, that changed after the applicant entered the United States, and that are relevant to the applicant's eligibility for asylum. He said, for example, the change circumstances provision will deal with situations like those in which an alien's home government may have stepped up its persecution of people of the applicant's religious faith or political beliefs. Now, that tells me that Senator Hatch, who was in the conference committee and took the lead in explaining the compromise, in his view, somebody who had a preexisting risk of persecution was not barred from establishing change circumstances if he could show that the government had somehow stepped up its persecution of individuals similarly situated. How does that extend the time in which to file his petition for asylum? If he was at a risk of persecution before he converted to Christianity, which you claim he was, why couldn't he file his in that one year? Well, I think everybody has to make a decision on their own, Your Honor, about when to file that application. Because actually filing an application for asylum is, for many people, it's a traumatic experience. It's essentially divorcing yourself from your country of birth. And what Congress, I think, sorry, Your Honor. Factually, here, he went to the British consulate or embassy to try to get his status as a British, I guess, permanent resident established, and they said, no, we're not going to do that because you've been out of the country more than, I guess, three years. His status as a British resident was terminated thereafter he turned around and filed an application for asylum. So, in a way, it looks like, well, I can't do it that way. I guess I'll get baptized. Well, the thing about that, Your Honor, is the immigration judge never questioned the sincerity of his conversion. His testimony was deemed entirely credible. The immigration judge had nothing negative to say about his credibility. She entirely accepted the fact that after remaining in the United States and after having some leanings toward the Catholic Church, he became much more involved. Instead of going to church, you know, four or five times a year, he began going twice a week, going through, you know, Bible study classes, and then he converted to Christianity. And the immigration judge accepted the sincerity of that conversion completely. But, you know, going back to your question, Judge Baird, because I understand that really is the central question in the case, is why would Congress have permitted somebody to wait until they got their citizenship? I mean, from my perspective, my reading of Judge Hatch's... Senator Hatch. Yes, excuse me. That's right. My reading of Senator Hatch's comments suggests to me that Congress didn't want to punish somebody who failed to apply at the first opportunity where there was a material change that exacerbated the risk that that person was facing. But your submission would allow that time in which to apply to be unlimited, five years, ten years? No, only if there's a change in circumstance. Yes, and that's what the law provides. But you can only file an application under this exception if you can demonstrate that, in fact, there's been a change in circumstance. And you don't know, you can't predict the future, you don't have a crystal ball. So if you delay in filing, there's a good chance you're going to be barred from establishing your eligibility. But if something happens, if there's some dramatic change that really exacerbates the risk that you're facing, then the Act allows you to invoke the exception and apply. And, you know, I would direct... If he became a Catholic, the Iranian government would change itself and say, we no longer persecute Catholics or apostates. Then he'd be out, right? Oh, yeah. Yeah, yeah, he'd be out. Excuse me, I want to make sure Judge Hawkins is on the line. Absolutely. Okay. Hello, Your Honor. I wish you were here for this. I wish I were, too. Because much of this revolves around your recent decision, obviously. But there's another aspect to this that I think the immigration judge overlooked. And I think there's a statutory provision relating to motions to reopen. And I think the plain language of that statutory provision is inconsistent with the judge's construction of Section 208A2D. Section 240C6 says that although generally you have to file a motion to reopen removal proceedings within 90 days of the final order of removal, it says there shall be no time limit. There shall be no time limit on filing a motion to reopen for purposes of seeking asylum where you can demonstrate that there's been a material change in conditions in your homeland, and that the evidence was previously unconstitutional. That tells me that Congress didn't intend to have a one-year bar apply to persons who had a preexisting risk. But there's been no change in the homeland. There's been a change in your climate. That's true in this particular case. But the judge's interpretation would bar somebody from making a motion to reopen even if there were a change in the homeland. And that's why I think her position is incorrect. I think it's inconsistent with Section 240C6, and I think it's inconsistent with the legislative history. You know, I'm on a different subject. Still at sea on the limits of our jurisdiction. Yes. So do you want to talk about that? I do. And I'd like to talk about the Ramadan decision in particular. And it's a rare day, I have to say, that I part company with Judge Hawkins. And I can say that even when Judge Hawkins rules against me, I usually don't disagree with him. But on this particular issue, I think that the Ramadan decision, I have a problem with its use in particular of the conference report. Because the conference committee report on the REAL ID Act, it seems to me that it's saying two things that both can't be true. On the one hand, it's saying that the overarching purpose of the REAL ID Act is to supplant habeas corpus and create an effective remedy in the Court of Appeals that would take the place of habeas. And on the other hand, it's saying, well, that that remedy would be limited to pure questions of law or constitutional claims. And those two things just simply can't be true, because as the Supreme Court pointed out in St. Cyr, historically habeas has been available not just for pure questions of law, not just for, you know, questions of constitutional import, but it's always been available for reviewing the erroneous application of law to undisputed facts. This Court said as much in the Singh decision that's cited in our papers, it's in, I think, Section, Volume 351, there's so many Singh decisions nowadays, but the Second Circuit agrees with this, the Third Circuit agrees with this, the Eleventh Circuit agrees with this, and the Ninth Circuit agrees with this as well, that habeas is not limited to pure questions of law. That a judge sitting in habeas can review for the erroneous application of law to undisputed facts. Now, here we have undisputed facts, and in Ramadan, the facts were undisputed as well, because the asylum applicant in both cases was deemed credible. Thus, the Court must accept those facts as true. So as the district court found in this case, the application of the one-year bar is reviewable. But under Ramadan, it's not. So even though the Real ID Act was intended to simply take habeas corpus and essentially vest it in the Court of Appeals so that persons who could have obtained review in habeas would now do so in the Court of Appeals, they wouldn't be able to have two tiers of review, but they'd still have the same scope. But under Ramadan, they don't have the same scope. The scope is more narrow. And I think that invites a suspension clause issue that I think the Court in Ramadan overlooked. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Edward Olson from the U.S. Attorney's Office on behalf of the Respondent. The Petitioner may disagree with Judge Hawkins' decision in Ramadan. The problem for the Petitioner is that it is the law of the Ninth Circuit. And Ramadan makes clear that after the passage of the Real ID Act, this Court's jurisdiction to review any findings or questions of law is limited to constitutional questions or statutory construction questions. And what Petitioner seeks review of in this case are the factual determinations made by the immigration judge that, A, the asylum application was not filed within one year of his arrival in the United States, and, B, that he did not establish the existence of changed circumstances which materially affected his eligibility for asylum. Ramadan makes clear that those are factual determinations, that under the Real ID Act, this Court lacks jurisdiction. And what Petitioner seeks review of in this case are the factual determinations made by the immigration judge that, A, the asylum application was not filed within one year of his arrival in the United States, and, B, that he did not establish the existence of changed circumstances created by the Petitioner qualifies. I understand your question, Your Honor. I think Ramadan specifically addressed that question and said it's not a question of law. It's a question of whether or not the Petitioner has an obligation to demonstrate, quote, to the satisfaction of the attorney general, in this case the immigration judge, the existence of changed circumstances which materially affect the alien's eligibility for asylum. So to the extent that there's anything beyond a factual determination, you know, weighing the testimony at the removal proceeding, it's purely discretionary. Well, it's certainly a legal question as to whether the Petitioner has an obligation to demonstrate, quote, the satisfaction of the attorney general, in this case the immigration judge, the existence of changed circumstances which materially affect the alien's eligibility for asylum. And the Petitioner has created the changed circumstance. That's within the statute. So you see, that's a pure legal question, and there's no dispute here as to the fact. So is that a legal question that we can look at? Well, Your Honor, if I could just back up. I think in recognition of the fact that purely factual findings are not revealed by this Court any longer, the Petitioner has made an attempt to say, well, there is a legal question involved in this case. And as characterized in the brief, the legal question is, did the immigration judge err by saying, as a matter of law, a religious conversion cannot constitute a changed circumstance? But that's not what the I.J. said. The I.J. said, looking at your testimony, it looks like when you went to England originally in 1975, you started attending church in England. Your children were baptized in England. Your children attended religious schools. You attended church. When you moved to the United States, you attended church with your friends in Sacramento four to six times a year. It looks like you were leaning towards Christianity and had, as the Petitioner says, you were ashamed to be Muslim long before 1999, when you filed your asylum application. And the critical inquiry is, have there been changed circumstances to the extent that you didn't have a basis for an asylum claim before, but now you do? And the immigration judge said, well, looking at this case, it looks like there are changed circumstances. The immigration judge didn't conclude, as a matter of law, that a religious conversion cannot constitute the basis for an exception to the one-year asylum filing requirement. And I think it would be unreasonable and would probably be an error, as a matter of law, for the immigration judge to so conclude. But that's simply not a fair reading of the immigration judge's decision. In this case, Petitioner was granted withholding? That's correct. And my – obviously, the Petitioner can speak to this better than I can. I think the Petitioner is probably interested in pursuing this application, despite the fact that... So he can bring his children over here. Yeah, that's apparent. But as it stands now, because he does have withholding of removal and relief under CAT, he cannot be removed to the United Kingdom or Iran. Do you think that under Ramadan, we would be foreclosed from determining that the IJ or the BIA had simply miscounted, made a mistake in the mathematics as to whether someone could – was within the one-year period? Yeah, I think that probably would be reviewable. And obviously, I can't cite them to the Court, but I think there are unpublished decisions to the effect that, you know, if the immigration judge misunderstands the statute or the regulation and thinks that someone has to demonstrate changed circumstances, you know, before 1997 is supposed to act, something like that would probably be reviewable. That's just, frankly, not the case here. No, I understand it's not the case, but it puts in doubt some of the principles pronounced in Ramadan, maybe. I'm not sure I would agree with that, Your Honor. I think in Ramadan, the Court was addressing, you know, the factual scenario that gave rise to the appeal, and that was, you know, the person was from Egypt. And was alleging that based on certain activities that she participated in in San Francisco after she moved here and after the normal one-year filing requirement had expired, that she had demonstrated changed circumstances and the petitioner disagreed with the IJ's conclusion or the findings made by the IJ and the findings made by the BIA that she had failed to make that determination. And so the Court was really only addressing that factual scenario and saying that's really a factual determination made by an immigration judge. And it, frankly, cannot be characterized as a question of law, and that obviously made a difference, because If this petitioner did not have the withholding relief, the effect of denying asylum would be descending back probably clearly to be beheaded or have his hands cut off. And I think the immigration judge accepted that, that this person would be tortured if returned to Iran. I guess the reasoning was that we'll also withhold removal to the United Kingdom, because it was conceivable the United Kingdom might send him back to Iran. But I think the immigration judge accepted that this person clearly would be subjected to persecution and torture if removed to Iran. That's true. If the panel doesn't have any more questions, I'll rest. The immigration judge ruled here that Mr. Sardari had failed to establish changed circumstances without ever he faced before his conversion. And it's that that we believe to be legally erroneous. Thank you. Thank you very much. Very interesting case and good argument, gentlemen. Thank you.
judges: B. Fletcher, Hawkins, Bea